IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| PETER G., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Civil No. 23-3797 (CPO) <br><br> **OPINION** |

**O'HEARN**, United States District Judge:

**THIS MATTER** comes before the Court upon Plaintiff Peter G.'s Appeal (ECF No. 1) from the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for Supplementary Security Income ("SSI").[1] For the reasons set forth below, the Commissioner's decision is **AFFIRMED**.

**I.    PROCEDURAL HISTORY**[2]

On May 12, 2020, Plaintiff filed an application for SSI, alleging an onset of disability on that date. (ECF No. 4, R. at TK).[3] His application was denied on September 21, 2020, (R. at 54–63), and denied again upon reconsideration on January 4, 2021. (R. at 64–73). Plaintiff then

---

[1] Due to the significant privacy concerns in Social Security cases, any non-governmental party will be identified and referenced solely by first name and last initial in opinions issued in the United States District Court for the District of New Jersey. *See* D.N.J. Standing Order 2021-10.

[2] Because the record is voluminous, the Court sets forth only those facts that are necessary for context and are relevant to the issues upon appeal. The Court cites to the Administrative Record, (ECF No. 5), as "R." The Court follows the page numbers as listed in the Administrative Record, and not those automatically generated by the ECF docketing system. Background facts and medical history are set forth in a separate section below. *See* Part III, *infra*.

[3] Plaintiff originally filed claims for both SSI and Disability Insurance Benefits ("DIB"), alleging that he was disabled as of January 1, 2011. (R. at 189–90, 191–97). Plaintiff later withdrew his DIB claim and amended the alleged onset date to May 12, 2020. (R. at 38, 172).

requested a hearing before an Administrative Law Judge ("ALJ"). (R. at 116–17). On November 17, 2021, a hearing was held. (R. at 65–94, 147–61). On January 28, 2022, a different ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 16–27). Plaintiff appealed the ALJ's decision to the Appeals Council on April 6, 2022. (R. at 8–10). The Appeals Council denied Plaintiff's request for review on May 22, 2023, (R. at 1–7), rendering the ALJ's decision final.

On July 14, 2023, Plaintiff timely appealed to this Court seeking review pursuant to 42 U.S.C. § 405(g). (ECF No. 1). The Commissioner filed the Administrative Record on September 8, 2023. (ECF No. 5). Plaintiff filed a brief on December 4, 2023. (ECF No. 7, Pl.'s Br.). The Commissioner filed a responsive brief on December 21, 2023. (ECF No. 9, Opp. Br.). Plaintiff filed a reply brief on January 29, 2024. (ECF No. 12, Reply Br.).

## II.    STANDARD OF REVIEW

When reviewing a final decision of an ALJ as to disability benefits, a court must uphold the ALJ's factual decisions if they are supported by "substantial evidence." *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000); 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). It is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (quoting *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971)). Courts may not set aside the ALJ's decision if it is supported by substantial evidence, even if the Court "would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001).

In addition to the "substantial evidence" inquiry, the court must also determine whether the ALJ applied the correct legal standards. *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983) (citation omitted). The Court's review of an ALJ's legal determinations is plenary. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000) (citing *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999)).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Act further states:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id*. § 423(d)(2)(A).

The Commissioner has promulgated a five-step sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i)–(v). Before the ALJ, "[t]he burden of proof is on the claimant at all steps except step five, where the burden is on the Commissioner of Social Security." *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019) (citation omitted). The analysis proceeds as follows:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity[.]" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he is, he is not disabled. *Id*. Otherwise, the ALJ moves on to step two.
>
> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. *Id*. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do

basic work activities[.]" *Id.* §§ 404.1520(c), 416.920(c). If the claimant lacks such an impairment, he is not disabled. *Id*. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If he has such an impairment, the ALJ moves on to step three.

At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" *Smith*, 631 F.3d at 634. If the claimant's impairments do, he is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If they do not, the ALJ moves on to step four.

At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether he can perform his "past relevant work." *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). A claimant's "[RFC] is the most [he] can still do despite [his] limitations." *Id*. §§ 404.1545(a)(1), 416.945(a)(1). If the claimant can perform his past relevant work despite his limitations, he is not disabled. *Id*. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If he cannot, the ALJ moves on to step five.

At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] ... age, education, and work experience[.]" *Id*. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). If the claimant can make an adjustment to other work, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If he cannot, he is disabled.

*Id*. at 201–02.

The plaintiff bears the burden on appeal of showing not merely that the ALJ erred, but that the error was harmful. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009); *see also Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005) (finding that "a remand is not required here because it would not affect the outcome of the case"). That is, the plaintiff must "explain[ ] . . . how the . . . error to which he points could have made any difference." *Shinseki*, 556 U.S. at 413.

4

### III. FACTUAL BACKGROUND[4]

#### A. Plaintiff's Family, Educational, Work, and Medical History

Plaintiff Peter G. was 52 years old on the alleged onset date of May 12, 2020, and 53 years old at the time of the ALJ's decision. (R. at 25).[5] Plaintiff has never married and does not have any children. (R. at 189). He has a high-school education, and he has not completed or enrolled in any type of specialized job training, trade school, vocational school, or college classes. (R. at 254, 301).

Plaintiff currently lives with his roughly 90-year-old mother. (R. at 19). They previously lived together with Plaintiff's father, who passed away following the filing of Plaintiff's claim. (R. at 44). Plaintiff alleged that he had consistently provided care for both of his parents, shopped for them, and handled their bills. (*Id.*). He also took care of their dog, which included walking and feeding. (*Id.*).

Plaintiff worked as an overnight supervisor and barista at an airport Starbucks from 2007 to 2008. (R. at 39). From 2009 until the initial alleged onset date in 2011, Plaintiff worked as a landscaper and snow remover for a landscaping company, where he held a supervisory role. (R. at 41–43). Plaintiff testified at his hearing that he stopped working there because "I became an alcoholic and it affected my performance and it developed what I believe to be anxiety and depression." (R. at 43). Plaintiff also stopped driving at or about this time due to debilitating panic attacks, stating that "it just really scares me getting behind the wheel of a car" and he

---

[4] The Court recites only the facts that are necessary to its determination on appeal.

[5] Because Plaintiff voluntarily withdrew his request for a hearing relating to his DIB claim and period of disability, *see* (R. at 16–17, 38), the ALJ's decision addressed only Plaintiff's application for SSI as of the amended onset date of May 12, 2020. (R. at 17).

5

doesn't want to put other drivers at risk. (R. at 44, 46). Plaintiff also claims that he is unable to work because he can't leave his mother "by herself for eight or nine hours a day." (R. at 47).

Plaintiff has a significant history of dizziness, and he experiences problems with his equilibrium that causes him to sometimes lose balance while walking up or down stairs. (R. at 23, 45). He has a remote history of right knee surgery, experiences back pain, and is an every-day cigarette smoker. (R. at 19, 354).

In May 2015, Plaintiff had ultrasounds of his thyroid by his primary care physician, Dr. Rafat S. Choudhry, but the ultrasound results were unremarkable. (R. at 361–62). At his follow-up with Dr. Choudhry one month later, Plaintiff listed his current medications as Effexor, Prozac, and propranolol. (R. at 369). In October 2015, Plaintiff complained of bilateral hip pain that interfered with his sleep. (R. at 380). Dr. Choudhry prescribed naproxen and trazodone, and he referred Plaintiff to a specialist for treatment. (R. at 380, 382, 384). In April 2016, Plaintiff had elevated liver enzymes, and Dr. Choudhry diagnosed alcoholic hepatitis without ascites, primary insomnia, anxiety, and alcohol use. (R. at 397–99). In July 2016, Plaintiff had elevated blood pressure due to noncompliance with his medication regimen. (R. at 408).

In May 2019, Plaintiff visited Dr. Choudhry after being hospitalized for alcohol intoxication and dehydration, and Dr. Choudhry prescribed Aldactone for blood pressure and diagnosed Plaintiff with alcoholic hepatitis without ascites, insomnia, hypertension, thyrotoxicosis, and anxiety disorder. (R. at 429, 431). In a follow-up with Dr. Choudhry in October 2019, Plaintiff reported a recent hospitalization for pancreatitis due to noncompliance with his medication regimen; Dr. Choudhry prescribed Naltrexone and recommended cognitive behavioral therapy. (R. at 437, 440–41). In November 2019, Plaintiff informed Dr. Choudhry that he was in a "detox center" in Atlantic City, New Jersey. (R. at 451). Dr. Choudhry

6

prescribed Wellbutrin and encouraged Plaintiff to attend AA meetings. (R. at 454). None of the records related to the 2019 hospitalizations appear in the medical record.

After a break in treatment, Plaintiff next visited Dr. Choudhry in December 2020 stating that he had been "drinking heavily" and that he had been experiencing alcohol withdrawal symptoms, including a possible seizure. (R. at 491). Dr. Choudhry prescribed clonidine and Wellbutrin, and diagnosed conversion disorder with seizures or convulsions, withdrawal symptoms, alcoholic hepatitis without ascites, hypertension, nicotine dependence, and hypos-osmolality and hyponatremia. (R. at 493–94). In a follow-up appointment later that month, Plaintiff showed elevated liver enzymes and was prescribed Lexapro and metoprolol. (R. at 486, 489). Plaintiff saw Dr. Choudhry regularly in 2021, mostly to monitor his blood pressure. *See* (R. at 465–85, 501–33). In October 2021, the last appointment in the record, Dr. Choudhry noted that Plaintiff's liver enzymes were "getting worse" and that "a liver biopsy may be considered." (R. at 504).

Notwithstanding these ailments, Plaintiff's physical examinations repeatedly showed no other abnormalities, normal strength in all muscle groups, and no psychomotor slowing or agitation. *See* (R. at 501–551). Plaintiff testified that he enjoys fishing and sports, and he spends time with others by going fishing or to the pool about four times a week. (R. at 19). He attends AA meetings and walks two miles a day. (*Id.*). He does not have any problem getting along with family, friends, neighbors, or others, and gets along "very well" with authority figures. (*Id.*). Plaintiff does not currently see a physician or other healthcare provider, does not have any future appointments scheduled, and is no longer taking any prescribed or nonprescribed medications. (R. at 19, 251–53).

**B.   The ALJ's Decision**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date, May 12, 2020. (R. at 19).

At step two, the ALJ found that Plaintiff has the following severe impairments: dizziness and giddiness. (*Id.*). The ALJ also found that Plaintiff suffers from "medically determinable mental impairments of anxiety, depression and conversion disorder with seizures or convulsions," but that these impairments, considered singly and in combination, are nonsevere because "they do not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities." (R. at 21).

At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 22). Specifically, the ALJ stated that he had:

> carefully considered all of the physical and mental impairment listings, specifically listing 11.00, referable to neurological disorders, but finds that the claimant's impairments do not reach the level of severity or reveal signs, symptoms or laboratory findings that meet or medically equal any of the impairments listed in Appendix 1.

(*Id.*). The ALJ further stated that the medically determinable impairments "cause no more than 'mild' limitation in any of the functional areas" and that "the evidence does not indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities." (*Id.*).

At step four, the ALJ found that during the relevant period, Plaintiff had the residual functional capacity "to perform a full range of work at all exertional levels but with the following nonexertional limitations: can never climb ladders or scaffolds; can frequently balance; and must avoid moving mechanical machinery and unprotected heights." (*Id.*). Regarding Plaintiff's

alleged problems with equilibrium, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. at 23). Commenting specifically on the evidentiary record, the ALJ stated that he "cannot defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from medical sources" because the record "does not contain any consultative examinations and no opinion evidence from any treating or examining medical provider." (R. at 24). Further, the ALJ noted that "the record does not contain any opinions from treating or examining physicians indicating that the claimant is disabled or even has limitations greater than those determined in this decision." (*Id.*). Consequently, the ALJ found that Plaintiff "is capable of performing past relevant work as a coffee maker" and that "[t]his work does not require the performance of work-related activities precluded by the claimant's residual functioning capacity." (*Id.*).[6]

In addition to past relevant work, the ALJ found that "there are other jobs that exist in significant numbers in the national economy that the claimant can also perform, considering the claimant's age, education, work experience, and residual functioning capacity." (R. at 25). Although the ALJ determined that Plaintiff's ability to perform work at all exertional levels "has been compromised by nonexertional limitations," the ALJ credited the testimony of a vocational expert who found that Plaintiff would additionally be able to perform the requirements of

---

[6] Although the step four determination of Plaintiff's ability to perform relevant past work negates the need to progress to step five, *see Hess*, 931 F.3d at 201–02, the ALJ nevertheless conducted a step five analysis in the alternative to highlight the presence of other work that exists in significant numbers in the national economy that Plaintiff can perform. *See* (R. at 25–26).

9

occupations including a hand packer, store laborer, and industrial cleaner. (R. at 26). Crediting the vocational expert's testimony further, the ALJ determined that, in addition to Plaintiff's past relevant work as a coffee maker, Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (*Id.*). Accordingly, the ALJ concluded that Plaintiff was not disabled. (*Id.*).

## IV. DISCUSSION

Plaintiff raises three challenges on appeal: (1) that substantial evidence does not support the residual functional capacity because the ALJ failed to consider Plaintiff's combination of impairments; (2) that substantial evidence does not support the residual functional capacity because the ALJ failed to properly develop the record and based his determination on a lay interpretation of the medical record; and (3) that the ALJ failed to properly explain the residual functional capacity in accordance with Social Security Ruling ("SSR") 96-8p. *See* (Pl.'s Br. 9– 19).[7] As set forth below, the Court finds that none of these arguments warrants remand.

### A. The ALJ Considered the Functional Limitations Stemming from Plaintiff's Combination of Impairments

Plaintiff contends that the ALJ failed to include functional limitations stemming from his combination of severe and nonsevere impairments when determining the residual functional capacity. Specifically, Plaintiff argues that the ALJ failed to consider Plaintiff's "ten non-severe impairments when formulating the RFC" and that "the ALJ's decision does not reference any of [Plaintiff's] non-severe impairments after step three." (Pl.'s Br. 11). The impairments that Plaintiff alleges the ALJ failed to evaluate include depression, anxiety, and insomnia. (*Id.*). In addition, Plaintiff asserts that the ALJ failed to evaluate the effect of these impairments

---

[7] All citations to specific pages of the parties' briefs use the page numbers listed in the briefs themselves, not those generated automatically by the ECF system.

10

combined with his alcoholic hepatitis, hypertension, hypo-osmolality and hyponatremia, conversion disorder, bilateral bursitis, right knee pain, and history of right knee surgery. (*Id.*). The Court disagrees, finding that the ALJ's decision clearly accounted for these impairments, both singly and in combination, and that any failure to provide further analysis is harmless.

So long as a claim is not denied at step two, the ALJ's failure to classify any additional alleged impairment as severe is harmless. *See Salles v. Comm'r Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007) ("Because the ALJ found in Salles's favor at Step Two, even if he had erroneously concluded that some of her other impairments were non-severe, any error was harmless.") (citing *Rutherford*, 399 F.3d at 553). Instead, the relevant question at step two is not how many severe or nonsevere impairments exist, but whether the claimant has at least one severe impairment that justifies proceeding to the next step of the sequential evaluation process. *See* 20 C.F.R. § 416.920(c) ("If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled."). As such, an error as to the designation of a particular impairment as severe or nonsevere is harmless unless a dispositive decision was made at step two. *See* 20 C.F.R. § 416.923 ("If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled.").

Here, the ALJ classified Plaintiff's dizziness and giddiness as severe impairments. (R. at 19). There is ample evidence in the record demonstrating that the ALJ considered each of Plaintiff's other impairments, both singly and in combination and determined them to be nonsevere. The ALJ found that:

> Based on the evidence as described above, the undersigned Administrative Law Judge finds no evidence to support a finding that these conditions including, but

> not limited to, alcoholic hepatitis without ascites, essential hypertension, anxiety disorder due to known physiological condition, depressive disorder, alcohol use unspecified with unspecified alcohol-induced disorder, bursitis, hypo-osmolality/hyponatremia, pain in unspecified hip, pain in right knee and conversion disorder with seizures or convulsions, cause any more than minimal, if any, limitations in the claimant's ability to perform basic physical and/or mental work-related functions lasting in duration for not less than 12 months and are nonsevere within the meaning of the Social Security Act.

(R. at 21). The ALJ then undertook a four-part analysis of mental functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. (R. at 21–22). The ALJ concluded that Plaintiff's "medically determinable mental impairments cause no more than 'mild' limitation in any of the functional areas." (R. at 22). The ALJ also noted that Plaintiff's "medically determinable mental impairments of anxiety, depression and conversion disorder with seizures or convulsions, *considered singly and in combination*, do not cause more than minimal limitation in [his] ability to perform basic mental work activities and are therefore nonsevere" (R. at 21) (emphasis added). Further, the ALJ stated explicitly that he "considered *all* of [Plaintiff's] medically determinable impairments, including those that are not severe, when assessing [his] residual functional capacity." (*Id.*) (emphasis added).

In making these conclusions, the ALJ cited repeatedly to Dr. Choudhry's medical records. *See* (R. at 19–24 (citing Exs. 1F, 2F, and 3F)). Taken as a whole, the Court finds that there is far more than "a mere scintilla" of evidence supporting the ALJ's determinations at step four, *see Rutherford*, 399 F.3d at 552, and it is not the role of the Court to now reweigh factual determinations simply because Plaintiff desires a different result. *See Monsour Med. Ctr. v. Heckler*, 806 F.2d 1182, 1190 (3rd Cir. 1986); *Fargnoli*, 247 F.3d at 38.

Plaintiff also contends that the ALJ's decision does not reference any of Plaintiff's nonsevere impairments after step three. (Pl.'s Br. 11). However, an ALJ is not required to use

12

particular language or adhere to a particular format in conducting his analysis so long as "there is sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). As discussed below, *see* Part IV(A)(ii), *infra*, the ALJ sufficiently developed the record to permit meaningful review, and it is therefore immaterial whether the ALJ specifically discussed Plaintiff's nonsevere impairments after step three because he did so elsewhere in the sequential evaluation process.

Even assuming the ALJ made an error in failing to discuss Plaintiff's combination of impairments in greater detail, Plaintiff does not meet his burden of showing such an error was harmful. Plaintiff must explain *how* the error to which he points would have made any difference. *See Shinseki*, 556 U.S. at 413. He fails to do so here. As discussed, the ALJ referenced Plaintiff's anxiety, depression, and alcoholism repeatedly throughout the record, along with Plaintiff's other nonsevere impairments. *See* (R. at 19–24). Plaintiff points to his insomnia diagnosis as an example of an impairment that he claims the ALJ failed to evaluate. (*Id.* at 10). The ALJ's decision, however, noted that Plaintiff's "anxiety and panic attacks affect his sleep," echoing the symptoms that Plaintiff himself listed on his function report regarding conditions affecting his sleep. *Compare* (R. at 19) *with* (R. at 234). Moreover, Plaintiff provided no evidence indicating that he requires anything beyond minimal limitations on basic work activities as a result of his impairments. *See* 20 C.F.R. § 416.912(a) (noting that the claimant's duty to provide affirmative evidence of disability is "ongoing" and "applies at each level of the administrative review process"). In this way, Plaintiff has failed to "explain[ ] . . . how the . . . error to which [he] points could have made any difference" regarding the ALJ's decision. *See Shinseki*, 556 U.S. at 413. Accordingly, the Court declines to remand on this basis.

### B.     The ALJ Properly Developed the Record

Plaintiff next alleges that the ALJ failed to properly develop the record regarding his mental impairments. Specifically, Plaintiff contends that the ALJ "failed entirely to inquire about the effects of [Plaintiff's] depressive disorder and insomnia on his functional capacity," and that the ALJ therefore had a "duty to develop the record by obtaining a consultative examination because the record contained no medical evidence of [Plaintiff's] functional capacity." (Pl.'s Br. 17). The Court disagrees and declines to remand on this basis.

Plaintiff argues that the record before the ALJ contained neither a treating provider's opinion nor a consultative examination assessing Plaintiff's functional capacity. (Pl.'s Br. 18). Because of this, Plaintiff claims, the ALJ assessed Plaintiff's ability to perform work-related physical and mental functions without the benefit of sufficient medical evidence. (*Id.* at 19). Plaintiff contends that this lack of medical evidence means that the ALJ's residual functional capacity determination necessarily lacks substantial evidence.

Citing the Third Circuit's opinion in *Doak v. Heckler*, Plaintiff argues that substantial evidence cannot support an ALJ's decision where "[n]o physician suggested that the activity [Plaintiff] could perform was consistent with" the RFC determination. 790 F.2d 26, 29 (3d Cir. 1986). As a result, Plaintiff claims, remand is warranted because the residual functional capacity was determined "in the absence of any medical evidence" of Plaintiff's functional abilities. (Pl.'s Br. 19). The Third Circuit, however, has rejected readings of *Doak*—like Plaintiff's—that imply that remand is warranted simply because an RFC determination was made without an assessment from a physician. *See, e.g., Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006) ("There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC."); *Chandler v. Comm'r Soc. Sec.*, 667 F.3d 356, 362 (3d Cir.

14

2011) ("[T]he ALJ is not precluded from reaching RFC determinations without outside medical expert review of each fact incorporated into the decision."). Thus, the Court declines to read *Doak* as requiring remand when there is a lack of a physician's assessment of the activity associated with the residual functional capacity.

Additionally, the ALJ's decision to order a consultative examination is discretionary. *See* 20 C.F.R. § 416.919a. Some examples of reasons for ordering a consultative examination include: (1) insufficient medical evidence; (2) inability to obtain such evidence; (3) highly technical or specialized medical evidence that is not available from current treatment sources; and (4) an indication that a change in the claimant's condition will likely affect the ability to work. *Id.*

Here, the record does not reflect any of the above reasons for ordering a consultative mental examination. Rather, as the ALJ noted throughout his decision, the evidence regarding Plaintiff's mental functionalities was sufficient to determine that Plaintiff had only a "mild" limitation at most in any of the examined functional areas. *See* (R. at 21–22). Likewise, the state agency psychological consultants found "no mental medically determinable impairments established." (R. at 55–56, 67–68). The consultants' conclusions further support the ALJ's decision even if, at bottom, "[t]he ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." *Chandler*, 667 F.3d at 361.

Finally, any error in further developing the record is harmless, because Plaintiff failed to "explain[ ] . . . how the . . . error to which [he] points could have made any difference." *See Shinseki*, 556 U.S. at 413. The ALJ consistently weighed the medical evidence in the record—stemming almost entirely from Plaintiff's physician, Dr. Choudhry—against the relevant

15

standards regarding Plaintiff's functionalities. As discussed above, Plaintiff has provided no competing evidence indicating that he requires anything beyond minimal limitations on basic work activities as a result of his impairments. *See* 20 C.F.R. § 416.912(a).

Accordingly, the Court finds that the record contained sufficient evidence for the ALJ to make a determination of disability and there was no need for the ALJ to further develop the record—through a consultative examination or otherwise.

### C.     The ALJ Satisfied the Requirements of SSR 96-8p

Finally, Plaintiff argues that the ALJ failed to meaningfully explain his findings that Plaintiff had the capacity to perform a full range of work with neither exertional nor mental limitations. (Pl.'s Br. 14–15). Plaintiff contends that the ALJ's failure to do so is reversible error for failing to adhere to SSR 96-8p, the agency's policy interpretation regarding the assessment of residual functional capacity. The Court disagrees.

The policy directs that the ALJ must provide "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Soc. Sec. Ruling 96-8p, 1996 WL 374184, at *4 (S.S.A. July 2, 1996).[8] In this way, an ALJ "must provide a discussion of the evidence and an explanation of reasoning for [his] conclusion to sufficiently enable meaningful judicial review." *Glenda M. v. Comm'r Soc. Sec.*, Civ. No. 22-03137, 2023 WL 6387515, at *6 (D.N.J. Sep. 29, 2023). "An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and [his] conclusions." *Id.* (quoting *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010)).

---

[8] Social Security Rulings are binding on all components of the Social Security Administration. 20 C.F.R. § 402.35(b)(1); *see also Henderson v. Soc. Sec. Admin.*, 87 Fed. App'x 248, 251 (3d Cir. 2004).

Plaintiff argues that, although the ALJ noted Plaintiff's "unremarkable physical examinations and system reviews and general normal activities of daily living," the ALJ "failed to connect that evidence to the RFC." (Pl.'s Br. 15). Specifically, Plaintiff contends that the ALJ failed to explain how Plaintiff could "perform, on a sustained basis, the mental functions required for full-time competitive employment" given his mental and physical limitations and that this failure is not harmless. (*Id.*). The Commissioner responds that the ALJ's discussion of Plaintiff's examination findings and clinical findings from the relevant period, "coupled with his finding that Plaintiff could perform a full range of work at all exertional levels but never could climb ladders or scaffolds; frequently could balance; and needed to avoid moving mechanical machinery and unprotected heights," fully satisfies the requirements of SSR 96-8p. (Opp. Br. 18). The Court agrees with the Commissioner's assessment.

Under SSR 96-8p, the ALJ must compare the physical and mental demands of Plaintiff's past work with his RFC assessment to determine whether Plaintiff is physically and mentally capable of returning to his past work. *See* 20 C.F.R. § 416.945 ("When we assess your residual functional capacity, we will consider your ability to meet the physical, mental, sensory, and other requirements of work."). The ALJ met this requirement by accounting for, *inter alia*, Plaintiff's dizziness and equilibrium issues in limiting Plaintiff's residual functional capacity to work that does not require climbing ladders or scaffolds, does not consist of moving mechanical machinery, and does not expose Plaintiff to unprotected heights. (R. at 22). The ALJ also found that Plaintiff does not have any problem getting along with family, friends, neighbors, or others, and gets along "very well" with authority figures. (R. at 19). Accordingly, the Court is satisfied that "there is sufficient development of the record and explanation of findings to permit meaningful review" of the ALJ's determinations at step four. *See Jones*, 364 F.3d at 505.

To be clear, Plaintiff retains the burden to show that he cannot perform his past relevant work as a coffee maker. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (noting that the burden is on the claimant at step four to prove "that he is unable to return to her past relevant work either as he performed that work or as that work is generally performed in the national economy"); 20 C.F.R. § 416.912(a). Plaintiff failed to meet this burden. Here, the vocational expert testified—and the ALJ concluded—that Plaintiff could perform his past relevant work as a coffee maker as actually and generally performed. (R. at 24–25). The vocational expert's testimony alone constitutes substantial evidence upon which the ALJ could base his decision. Beyond that, the ALJ also determined that Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms are "inconsistent because they are not substantiated or corroborated by the evidence of record," (R. at 23). This Court may not reweigh evidentiary determinations. *See Monsour Med. Ctr.*, 806 F.2d at 1190.

In sum, the Court is satisfied that the ALJ provided a sufficient "logical bridge" between the evidence and his conclusions to meet the requirements of SSR 96-8p. *See Glenda M.*, 2023 WL 6387515, at *6 (quoting *O'Connor-Spinner*, 627 F.3d at 618).

## V.  CONCLUSION

For the foregoing reasons, the final decision of the Commissioner denying Plaintiff's application for SSI is **AFFIRMED**. An Order follows.

Dated: July 24, 2024

CHRISTINE P. O'HEARN
United States District Judge